1  **WO**

2

3

4

5

6               IN THE UNITED STATES DISTRICT COURT

7                 FOR THE DISTRICT OF ARIZONA

8

9  Gary Pettibone,                    )    No. CV10-2786-PHX-JAT
                                      )
10              Plaintiff,            )    **ORDER**
                                      )
11  vs.                               )
                                      )
12                                    )
    Chapman   Automotive   Group   d/b/a)
13  Chapman BMW and Goldleaf Partners, )
                                      )
14              Defendants.           )
                                      )
15  _____ )

16

17      Defendant Chapman BMW, LLC ("Chapman") filed a Motion to Compel Arbitration

   (Doc. 28) on July 11, 2011.  The Court now rules on the Motion.
18

19  **I.    BACKGROUND**

20      Plaintiff Gary Pettibone began working for Chapman on July 15, 2009 as an

   automobile sales consultant.  On July 20, 2009, he signed a Member Acknowledgment
21
   Agreement (the "Agreement").  The Agreement contains an arbitration clause that reads:
22
              I further agree and acknowledge that the Dealership and I will
23            utilize binding arbitration to resolve all disputes that may arise
              out of the employment context.  Both the Dealership and I agree
24            that any claim, dispute, and/or controversy that either I may
              have against the Dealership (or its owners, directors, officers,
25            managers, employees, agents, and parties affiliated with its
              employee benefit and health plans) or the Dealership may have
26            against me, arising from, related to, or having any relationship
              or connection whatsoever with my seeking employment with,
27            employment by, or other association with the Dealership shall
              be  submitted  to  and  determined  exclusively  by  binding
28            arbitration under the Federal Arbitration Act, in conformity with

the procedures of the Uniform Arbitration act as adopted in the Arizona Arbitration Act, A.R.S. §§12-1501-1518.  Included within the scope of this Agreement are all disputes, whether based on tort, contract, statute (including, but not limited to, any claims of discrimination and harassment, whether they be based on the Arizona Civil Rights Act, Title VII of the Civil Rights Act of 1964, as amended, or any other state or federal law or regulation), equitable law, or otherwise, with exception of claims arising under the National Labor Relations Act . . . .

(Doc. 28-1.)

On December 18, 2009, Mr. Pettibone suffered tibial plafond fractures as a result of a hiking accident.  (Compl., Doc. 1, ¶11.)  Mr. Pettibone claims he is disabled within the meaning of the Americans with Disabilities Act (the "ADA") because of his accident.

Mr. Pettibone was absent from work as a result of his injuries until January 26, 2010.  (*Id.* ¶12.) When he attempted to return to work on January 26, Chapman allegedly told him that he would not be allowed to return to work without notice from his physician that he was able to work.  On January 29, 2010, Mr. Pettibone was terminated.

Mr. Pettibone filed this action on December 27, 2010.  He alleges Chapman violated the ADA, seeks a declaration that an actual controversy exists between him and Chapman under the ADA, and alleges intentional infliction of emotional distress.

Based on the Agreement, Chapman filed its Motion to Compel Arbitration.  Chapman asks the Court to order the parties to arbitration and dismiss Mr. Pettibone's claims or, alternatively, stay this action pending arbitration.

## II.    LEGAL STANDARD

The Federal Arbitration Act ("FAA") governs arbitration agreements in contracts involving interstate commerce.  9 U.S.C. §1.  Arbitration agreements, "shall be valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the revocation of any contract."  9 U.S.C. §2.  The FAA demonstrates the federal policy of favoring arbitration agreements. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).  If a court finds that an arbitration clause is valid and enforceable, the court must stay or dismiss the action to allow the arbitration to proceed. *Kam-Ko Bio-Pharm*

1   *Trading Co. Ltd-Australasia v. Mayne Pharma (USA)*, 560 F.3d 935, 940 (9th Cir. 2009).

2   Any "doubts concerning the scope of arbitrable issues should be resolved in favor of

3   arbitration, whether the problem at hand is the construction of the contract language itself or

4   an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone*, 460 U.S.

5   at 24-25.

6         Whether a particular dispute is arbitrable is an issue for the Court. *Howsam v. Dean*

7   *Witter Reynolds*, 537 U.S. 79, 83 (2002).  In making the arbitrability decision, the Court

8   applies a standard similar to the summary judgment standard. *The O.N. Equity Sales Co. v.*

9   *Thiers*, 590 F.Supp.2d 1208, 1212 (D. Ariz. 2008).  If there is no doubt as to the existence

10  of an agreement to arbitrate, then the Court can decide as a matter of law that the parties

11  entered into such an agreement. *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925

12  F.2d 1136, 1141 (9th Cir. 1991).

13  **III.    ANALYSIS AND CONCLUSION**

14        Mr. Pettibone does not dispute that he entered into an arbitration agreement with

15  Chapman.  Nor does he dispute that the arbitration agreement covers all of his claims here.

16  The scope of the arbitration agreement therefore is not in issue.  Mr. Pettibone instead argues

17  that the Agreement is substantively unconscionable because it is silent as to the costs for

18  arbitration.

19        Although the Supreme Court has emphasized a congressional intention to favor

20  arbitration, general contract defenses, such as unconscionability, may invalidate an

21  arbitration agreement. *Kam-Ko*, 560 F.3d at 940.  A party seeking to invalidate an arbitration

22  agreement because it would be too expensive bears the burden of showing the likelihood of

23  incurring prohibitive arbitration costs. *Green Tree Fin. Corp.-Alabama v. Randolph*, 531

24  U.S. 79, 92 (2000); *Harrington v. Pulte Home Corp.*, 119 P.3d 1044, 1055 (Ariz. Ct. App.

25

26

27

28

2005).[1]  The speculative risk that a party will incur prohibitive arbitration costs does not justify the invalidation of an arbitration agreement.  *Green Tree*, 531 U.S. at 91.  To invalidate an agreement on the basis of speculative risk would undermine the liberal policy favoring arbitration agreements.  *Id*; *Harrison*, 119 P.3d at 1056 (citing *Green Tree* and stating that "Arizona has the same policy favoring arbitration.").

Although the Agreement is silent as to the apportionment of arbitration costs, the Agreement provides that the procedures of the Uniform Arbitration Act, as adopted in the Arizona Arbitration Act, A.R.S. §§12-1501-1518, shall apply to an arbitration between the parties.  And A.R.S. §12-1501 provides in pertinent part: "Unless otherwise provided in the agreement to arbitrate, the arbitrators' expenses and fees, together with other expenses, not including counsel fees, incurred in the conduct of the arbitration, shall be paid as provided in the award."

Because the arbitrator has the authority to determine the payment of arbitration costs, Mr. Pettibone argues that he may be required to bear the expense of all or part of the arbitrator's fee.  Mr. Pettibone has submitted an affidavit stating that he has not found a job since Chapman terminated him, that he is not receiving unemployment compensation, and that he does not have any "substantial assets."  (Doc. 29, Affidavit, ¶¶5-7.)  Mr. Pettibone further attests that his wife works, but that her income does not cover all of their financial obligations.  (*Id*. ¶8.)  He claims that he could not pay a bill of $3,000 for arbitration costs.  (*Id*. ¶11.)

The Court finds that Mr. Pettibone has not met his burden of proving that he will *likely* incur prohibitive arbitration costs.  *Green Tree*, 531 U.S. at 92; *Harrington*, 119 P.3d at 1055.  The Agreement adopts the procedures of the Arizona Arbitration Act, which allows the arbitrator to apportion the costs.  While it is possible that the arbitrator could order Mr.

---

[1]Because the Court is not sitting in diversity, it need not apply Arizona law to the enforceability issue.  But even if the Court applied Arizona law, the Court would reach the same result.

1  Pettibone to pay half or even all of the arbitration costs, it is also possible that the arbitrator

2  will make him pay none of the arbitration costs.  If Mr. Pettibone argues his inability to pay

3  to the arbitrator, it seems more likely that the arbitrator will order Chapman to bear the

4  burden of most of the arbitration costs.

5      Moreover, although Mr. Pettibone asserts that he could not afford to pay even $3,000

6  in arbitration costs, his affidavit does not necessarily make that showing.  His wife works,

7  he is bringing in some money from an internet business, and although he claims he does not

8  have "substantial" assets, he does not detail assets he might have available.  *Harrington*, 119

9  P.3d at 1056 ("The affidavits submitted by the five named appellees stated they could not

10  afford the cost of arbitration, either because they are retired . . . or self-employed and live on

11  a 'low fixed income.' . . . . appellees further stated that a cost of 'even a thousand dollars' for

12  arbitration would disallow them from bringing the lawsuit.  The affidavits offer no specific

13  facts regarding appellees' financial situations, only conclusory statements. There is no

14  showing of assets or why arbitration would be a hardship, let alone a *prohibitive* hardship .

15  . .")(emphasis in original).

16      Because Mr. Pettibone has not demonstrated a likelihood that he will incur any

17  arbitration costs, let alone prohibitive costs, the Court finds that the parties' agreement to

18  arbitrate is enforceable as written and is not substantively unconscionable.  *Green Tree*, 531

19  U.S. at 91 ("The 'risk' that Randolph will be saddled with prohibitive costs is too speculative

20  to justify the invalidation of an arbitration agreement"); *Harrison*, 119 P.3d at 1056 ("On this

21  record, appellees have not met their burden of proving arbitration will be prohibitively

22  expensive.  They have not shown that any arbitration costs or fees at all will be incurred, let

23  alone prohibitively expensive ones, as they may qualify for deferral or waiver of all fees. .

24  . . As such, the allegation that the arbitration clause is substantively unconscionable on this

25  record is speculative at best.")(internal citations omitted).  The Court therefore will order the

26  parties to proceed to arbitration.

27      Chapman asks the Court to dismiss all of Mr. Pettibone's claims because all his claims

28                                                     - 5 -

1   are covered by the Agreement.  In the alternative, Chapman seeks a stay of this case pending

2   completion of arbitration.  Mr. Pettibone does not dispute that all of his claims are covered

3   by the Agreement.

4          Although 9 U.S.C. §3 directs the Court, upon application by one of the parties, to

5   grant a stay pending arbitration, the Court retains discretion to dismiss the case instead.

6   *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th Cir. 1988).  Because all of Mr.

7   Pettibone's claims are covered by a binding agreement to arbitrate, the Court will dismiss his

8   claims.

9          Accordingly,

10         **IT IS ORDERED** Granting Defendant's  Motion to Compel Arbitration (Doc. 28).

11         **IT IS FURTHER ORDERED** dismissing this case in its entirety.

12         DATED this 15th day of November, 2011.

13

14

15                                        _____
                                          James A. Teilborg
16                                        United States District Judge

17

18

19

20

21

22

23

24

25

26

27

28